IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

ANDREW GRIEGO,

        Plaintiff,

vs.                                                                              No. CIV 05-0093 RB/ACT

THE STATE OF NEW MEXICO,
SOUTHERN NEW MEXICO CORRECTIONS
FACILITY, a Corrections Facility,
LT. LARRY TRUJILLO, in his capacity as
Corrections Officer Supervisor, SGT. JESUS SANDOVAL,
in his capacity as a Corrections Officer,
MAJOR MANUEL RAMIREZ, in his capacity as
a Corrections Officer, and SGT. DANIEL BLANCO,
in his capacity as a Corrections Officer,

        Defendants.

## MEMORANDUM OPINION AND ORDER

**THIS MATTER** is before the Court on Defendants' Motion for Qualified Immunity Summary Judgment and Stay of Discovery (Doc. 17), filed on September 8, 2005. Jurisdiction arises under 28 U.S.C. § 1331. Having reviewed the submissions of the parties and the relevant law, I find that this motion should be denied.

I.        Background.

Plaintiff ("Griego") alleges that corrections officers subjected him to cruel and unusual punishment when they shot him with a pepper ball gun while he was confined in his cell at the Southern New Mexico Correctional Facility ("SNMCF").[1] Griego asserts claims pursuant to 42

---

[1] The Complaint states that Griego is a resident of the City of Las Cruces. The Court presumes that Griego was not incarcerated when the complaint was filed and that the exhaustion requirements of the Prison Litigation Reform Act are inapplicable. *See* 42 U.S.C. § 1997e (a) and (h); *Norton v. City of Marietta*, ___F.3d ___, 2005 WL 3475904 (10th Cir. Dec. 20, 2005).

U.S.C. §1983 for cruel and unusual punishment, negligence, negligent facility management, assault and battery, and infliction of emotional distress.

Defendants filed a motion for summary judgment based on qualified immunity.

**II.     Summary Judgment Standard.**

A motion for summary judgment may be granted only when "there is no genuine issue as to any material fact and . . . the moving party is entitled to judgment as a matter of law." FED. R. CIV. P. 56(c). "Summary judgment is appropriate 'if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact.'" *Munoz v. St. Mary Kirwan Hosp.*, 221 F.3d 1160, 1164 (10th Cir. 2000) (quoting Rule 56(c)). When applying this standard, the court examines the record and makes all reasonable inferences in the light most favorable to the non-moving party. *Id.* Where different ultimate issues may properly be drawn, summary judgment is inappropriate. *Seamons v. Snow*, 206 F.3d 1021, 1026 (10th Cir. 2000).

**III.    Facts.**

On the morning of January 27, 2002, corrections officers approached Griego in his cell. (Compl. ¶ 13.) The officers instructed Griego to back up to the port to be handcuffed. (Compl. ¶ 14.) Griego was emotionally distraught because he had just been informed that his release date, scheduled for January 27, 2002, had been postponed. (Compl. ¶ 15.) At this point, Griego's version of events materially diverges from that of Defendants.

According to Griego, he informed Defendants Trujillo, Sandoval, and Ramirez that he would

voluntarily "cuff-up" as soon as his case worker returned with the order directing that Griego be sent to the Recreational and Diagnostic Center ("RDC") for a diagnostic evaluation rather than being released. (Pl. Ex. 2, Griego Aff.) Griego admits that he threw his food tray, but states that the port on his cell door was closed and it was not possible for anyone to be harmed. (*Id.*) Griego denies that he kicked his door or told the officers "to go ahead and gas him." (*Id.*) Griego was locked in his cell at all times and did not present a threat to anyone. (*Id.*)

According to Griego, Sandoval contacted Defendant Blanco and requested a "ready bag" that contained chemical agents for use with a pepper ball gun. (Compl. ¶ 17.) The officers did not seek approval from the Warden to use the pepper ball gun, as required by SNMCF policy. (Compl. ¶¶ 18-19.) The officers instructed Griego to step back and turn around. (Compl. ¶ 21.) Ramirez ordered an officer to shoot Griego with the pepper ball gun. (*Id.*) Griego was struck six or more times in the back. (Compl. ¶ 22.) The balls did not explode and inflicted large welts on Griego. (Compl. ¶ 23.) Contrary to SNMCF policy, the incident was not videotaped. (Compl. ¶ 24.)

Defendants recount their version of events in the form of an affidavit by Ramirez. (Def. Ex. 1, Ramirez Aff.) Ramirez was on duty as Chief Executive Duty Officer when Sandoval requested the ready bag over the radio. (Def. Ex. 1.) Ramirez inquired about the situation. (*Id.*) Sandoval advised Ramirez that Griego refused to comply with directives to be restrained so that he could be escorted out of his cell and that chemical agents and an extraction team might be needed. (*Id.*) Ramirez contacted Blanco, an officer certified to use the pepper ball gun, and directed Blanco to meet him at Griego's pod. (*Id.*)

Upon arrival at Griego's pod, Ramirez observed Trujillo directing Griego to cuff up. (Def. Ex. 1.) James Thomas (presumably the case worker) was present. (*Id.*) Thomas informed Ramirez

3

that Griego had become belligerent when he learned he was to be transferred to RDC for a diagnostic evaluation.  (*Id*.)   Thomas indicated that Griego became angry and kicked his door. (*Id*.) Consequently, Thomas asked officers to remove Griego's property from his cell.  (*Id*.)  Griego refused to comply with the officers' directives.  (*Id*.)  Griego attempted to strike Sandoval with food trays, but Sandoval closed the food port before Griego could reach him. (*Id*.)

Griego told Ramirez that Thomas refused to show him the order that required him to go to the RDC. (Def. Ex. 1.)  Griego stated that he was not going to cuff up and that the officers should "do what they had to do."  (*Id*.)  Griego said he knew that pepper gas was "bad" and would "mess up everybody in the pod."  (*Id*.)  Griego said that he would not give up and "to go ahead and gas him." (*Id*.) Ramirez promised Griego that Thomas would provide him with a copy of the RDC order and directed Griego to cuff up.  (*Id*.)  Griego refused and told Ramirez "to do what he had to do." (*Id*.)

Ramirez evaluated his options and decided to use the pepper ball gun.  (Def. Ex. 1.)  Ramirez considered using pepper gas in aerosol form, but it would have contaminated the whole pod.  (*Id*.) Ramirez considered using an extraction team to physically extract Griego from his cell, but that option would entail an escalation of force.  (*Id*.)  Ramirez believed that the use of the pepper ball gun was the minimum amount of force necessary to achieve compliance from Griego. (*Id*.)  The other inmates in the pod were not disruptive and remained quiet during the incident.  (*Id*.)

Ramirez directed  Blanco to give a final directive to Griego to allow the officers to restrain him. (Def. Ex. 1.)  Griego refused and moved to the back of his cell.  (*Id*.)  Ramirez directed Blanco to use the pepper ball gun on Griego.  (*Id*.)  Blanco fired six pepper balls through the food port at Griego, striking him in the lower back.  (*Id*.)  Griego immediately surrendered and placed his hands

4

behind his back at the cuff port to be restrained.  (*Id*.)

The officers escorted Griego to the infirmary for examination and treatment.  (Def. Ex. 1.) The nurse examined Griego and observed six one-inch welts on Griego's lower back.  (*Id*.)  Griego refused treatment and he was escorted back to his cell.  (*Id*.)   Griego denies that he refused treatment.  (Pl. Ex. 2.)

**IV.     Discussion.**

**A.      Whether the individual Defendants are entitled to qualified immunity.**

A government official is entitled to qualified immunity from civil damages when his "conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known."  *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982).  To reach the question of whether a defendant is entitled to qualified immunity, the court must first ascertain whether "[t]aken in the light most favorable to the party asserting the injury, do the facts alleged show the officer's conduct violated a constitutional right?" *Saucier v. Katz*, 533 U.S. 194, 201 (2001).  If the court finds that a favorable view of the facts alleged establishes a violation of a constitutional right, the next step is to ask whether the right was clearly established at the time of the defendant's alleged unlawful conduct.  *Id*.

The Eight Amendment states that "[e]xcessive bail shall not be required, nor excessive fines imposed, nor cruel and unusual punishments inflicted."  U.S. CONST. AMEND. VIII.  The Supreme Court has said that the use of excessive force against a prisoner can violate the Eighth Amendment, stating that "the unnecessary and wanton infliction of pain . . . constitutes cruel and unusual punishment forbidden by the Eighth Amendment."  *Whitley v. Albers*, 475 U.S. 312, 319(1986).

Griego claims that the individual defendants violated his right to be free from cruel and unusual punishment by using excessive force against him when they shot him with the pepper ball gun.

In order to prevail on an Eighth Amendment excessive force claim, plaintiff must show (1) that the excessive force was objectively harmful enough to establish a constitutional violation; and (2) that defendants acted with a sufficiently culpable state of mind. *Smith v. Cochran*, 339 F.3d 1205, 1212 (10th Cir. 2003). "The objective component . . . is contextual and responsive to contemporary standards of decency. The subjective element . . . turns on whether force was applied in a good faith effort to maintain or restore discipline or maliciously and sadistically for the very purpose of causing harm." *Id*.

"[P]epper spray is an instrument with which prison officers wield their authority, or force, and thus its use implicates the excessive use of force." *DeSpain v. Uphoff*, 264 F.3d 965, 978 (10th Cir. 2001). An inmate has an objective constitutional right to be secure in his "bodily integrity and free from attack by prison guards." *Hovater v. Robinson*, 1 F.3d 1063, 1068 (10th Cir. 1993). It is undisputed that Griego was confined in his cell at the time he was shot and was not an immediate threat to the officers except to the extent he was actively causing a disturbance. The other inmates in the pod remained quiet and were not disruptive. The fact that Griego was returned to the same cell after he visited the infirmary indicates that time was not of the essence in transporting him to the RDC. The use of the pepper ball gun under these circumstances may well have been harmful enough to establish a constitutional violation.

The facts relevant to the subjective component of the excessive force test are in dispute. The parties disagree as to whether the individual defendants used the pepper ball gun in a good faith effort to restore discipline or maliciously and sadistically for the purpose of causing harm. Ramirez avers

6

that he ordered the use of the pepper ball gun in good faith in order to gain compliance from Griego. Defendants are asking the Court to make a credibility determination and take Ramirez at his word. "A judge may not evaluate the credibility of witnesses in deciding a motion for summary judgment." *Seamons*, 206 F.3d at 1026. "In 'cases which involve delving into the state of mind of a party, [the] granting of summary judgment is especially questionable.'" *Id.* at 1028 (quoting *Hayden v. First Nat'l Bank*, 595 F.2d 994, 997 (5th Cir. 1979)). If Griego's contentions are taken as true and construed in the light most favorable to Griego, the officers' conduct may have violated the Eighth Amendment.

The next step in the qualified immunity analysis is whether the right was clearly established at the time of the individual defendants' alleged unlawful conduct. *Saucier*, 533 U.S. at 201. The Supreme Court has emphasized:

> For a constitutional right to be clearly established, its contours must be sufficiently clear that a reasonable official would understand that what he is doing violates that right. This is not to say that an official action is protected by qualified immunity unless the very action in question has been held unlawful, but it is to say that in light of pre-existing law the unlawfulness must be apparent.

*Hope v. Pelzer*, 536 U.S. 730, 739 (2002) (internal quotation marks and citations omitted).

It is clearly established that corrections officers employed by the state can be liable under the Eighth Amendment for using excessive force against prisoners. *Smith v. Cochran*, 339 F.3d at 1215. Griego asserts that the individual defendants applied excessive force by shooting him with a pepper ball gun while he was confined in his cell and posed no apparent threat. At the time of the incident, the law was clearly established that corrections officers could not attack a prisoner simply for non-compliance with an officer's order. *See Whitley v. Albers*, 475 U.S. 312, (1986). If Griego's version of the facts is true, as must be assumed for purposes of this motion, then the individual

defendants violated a "clearly established" right. A reasonable corrections officer would understand that the unjustified shooting of an inmate with a pepper ball gun violated the Eighth Amendment. The individual defendants are not entitled to qualified immunity or a stay of discovery.

**WHEREFORE,**

    **IT IS ORDERED** that Defendants' Motion for Qualified Immunity Summary Judgement and Stay of Discovery (Doc. 17), filed on September 8, 2005, is **DENIED.**

*/s/ Robert Brack*

_____
**ROBERT C. BRACK**
**UNITED STATES DISTRICT JUDGE**